**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHURCH OF GOD FLORIDA STATE
OFFICES, INC.,

     Plaintiff,

v.                                                        Case No: 8:25-cv-3199-CEH-NHA

MT. HAWLEY INSURANCE
COMPANY,

     Defendant.

_____/

**ORDER**

In this breach of contract action, Defendant Mt. Hawley Insurance Company ("Mt. Hawley") moves under 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the Southern District of New York. Doc. 8. Plaintiff Church of God Florida State Offices, Inc. ("Church") opposes transfer. Doc. 12. In its motion, Mt. Hawley requests transfer because, pursuant to the insurance policy's forum selection clause, the parties agreed to litigate all claims arising out of the policy in New York. Doc. 8 at 2.  In support of its motion, Mt. Hawley submits the subject insurance policy ("the Policy"). Doc. 8-1. Church opposes the motion. Doc. 12.

The Court, having considered the motion and being fully advised in the premises, will grant Mt. Hawley's Motion to Transfer and transfer this action to the Southern District of New York.

## I.    BACKGROUND

Plaintiff Church of God Florida State Office, Inc. entered into an agreement with Defendant Mt. Hawley Insurance Company, whereby Mt. Hawley would provide Church with insurance coverage (policy number MWC0601917) for the property located at 5408 Highway 674, Wimauma, Florida 33598. Doc. 1-2 ¶ 7. The Policy provided insurance coverage that, *inter alia*, protected Church's property from windstorm and water damage. *Id.* ¶ 8.

On October 9, 2024, Church's property sustained severe damage caused by Hurricane Milton, including but not limited to roof failure, water intrusion, and interior water damage. *Id.* ¶ 9. The damage occurred while the Policy was in effect, and full restoration to the Property exceeded $1.47 million. *Id.* ¶ 9. Mt. Hawley acknowledged Church's claim, assigned it claim number 00546967, and opened coverage on the claim for $31,234.86. *Id.* ¶¶ 11,12. Church disagreed with Mt. Hawley's damage assessment and alleged that Mt. Hawley improperly underpaid on the claim. *Id.* ¶¶ 13, 14. Therefore, on October 24, 2025, Church brought a breach of contract action against Mt. Hawley in state court, namely, in Hillsborough County, Florida, alleging that because Mt. Hawley breached the Policy, Church suffered monetary damages and loss of use of the premises. *Id.* ¶¶ 17, 18.

On November 19, 2025, Mt. Hawley timely removed the action to this Court based on diversity jurisdiction. Doc. 1. Mt. Hawley now moves to transfer the action to the Southern District of New York, asserting that the Policy's mandatory forum

selection clause requires any litigation commenced by Church against Mt. Hawley be initiated in New York.  Doc. 8. The pertinent clause of the Policy reads as follows:

**LEGAL ACTION CONDITIONS ENDORSEMENT**

This endorsement adds the following to LEGAL ACTION AGAINST US elsewhere in this Policy:

In the event of any litigation involving any matter arising out of or relating to this Policy, it is agreed that any Named Insured, any additional insured, any purported insured, or any beneficiary or purported beneficiary of this Policy shall submit to the jurisdiction of the New York state and New York federal courts, and shall comply with all the requirements necessary to give such courts jurisdiction. Any litigation arising out of or relating to this Policy shall be brought only in the state or federal courts of New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

All matters arising out of or relating to this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflict of law rules). All matters include, without limitation, the procurement, formation, issuance, validity, interpretation, and enforcement of this Policy, as well as claim handling and any other performance in connection with this Policy.

Doc. 8-1 at 33.

Mt. Hawley argues transfer of venue is warranted because by filing the lawsuit in Florida, Church violated the Policy's mandatory forum selection clause, which mandates that any litigation be brought only in New York. Doc. 8 at 2. Specifically, Mt. Hawley argues the Policy's forum selection clause is enforceable and valid, is mandatory, covers all of Plaintiff's claims, and should be enforced under 28 U.S.C. § 1404(a). Doc. 8 at 17-29.

3

Church responds that the Policy's forum-selection clause should not be enforced because doing so would contravene Florida public policy (Doc. 12 at 4-11). Moreover, Church avers that the forum selection clause was not negotiated freely, thereby rendering the Policy a contract of adhesion. *Id.* at 6-8. Finally, Church posits that transferring the lawsuit would deprive it of its day in court. *Id.* at 8-9.

Mt. Hawley replies that the case at bar does not present an extremely unusual scenario that would require this Court not to enforce the forum selection clause. Doc. 18. First, enforcing the Policy's forum-selection clause would not contravene public policy, as Florida has historically recognized parties' rights to select a particular forum to resolve contractual disputes. *Id.* at 2-3. Mt. Hawley further asserts the forum-selection clause was not obtained via fraud or overreaching, and enforcing the clause would not deprive Church of its day in court. *Id.* at 37. Finally, Mt. Hawley argues that public interest factors weight in favor of transferring the matter to New York. *Id.* at 7-8.

## II.    LEGAL STANDARD

The statute governing transfer of venue, 28 U.S.C. § 1404(a), provides, in relevant part, that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. § 1404(a) (quotation modified). This analysis typically requires a two-pronged inquiry wherein courts consider both the convenience of the parties and the public interest. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013). "The calculus changes, however, when the parties' contract

4

contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). A valid forum-selection clause "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr.*, 571 U.S. at 63 (citations and internal quotation marks omitted). Thus, "when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its venue privilege before a dispute arises." *Id.* "Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63–64.

The plaintiff's burden of proof is a heavy one: he must make "a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see also Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1284 (11th Cir. 2013). A court will invalidate a forum-selection clause only when "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281.

### III.    DISCUSSION

Church argues the forum selection clause is unenforceable because it contravenes Florida public policy; operates as a contract of adhesion; and it deprives Church of its day in Court. Doc. 12. However, the Court concludes that the forum selection clause is enforceable and will now address each of Church's objections to Mt. Hawley's Motion to Transfer.

#### A. Contravention of Florida Public Policy and Public Interest

Church first asserts that enforcement of the Policy's forum selection clause would violate Florida's public policy interest in regulating insurance claims that involve Florida property and Florida insureds. Doc. 12 at 5, 9-10. Mt. Hawley responds that Florida courts have routinely enforced New York forum selection clauses. Doc. 18 at 2-3.

Public interest factors "will rarely defeat a transfer motion" that is based upon a forum selection clause. *Atlantic Marine Const. Co.,* 571 U.S. at 64.  As a result, "forum-selection clauses should control except in unusual cases." *Id.*  Courts are therefore reluctant to find that public interest factors or public policy disfavor enforcement of a forum selection clause outside of extraordinary cases. *See, e.g., Davis v. Oasis Legal Finance Operating Company, LLC*, 936 F.3d 1174, 1178 (11th Cir. 2019) ("Public policy is an amorphous concept...Accordingly, it has been held that, the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution."); *SSAB Alabama, Inc. v. Kem-bonds, Inc.*, 17-CV-0175-WS-C, 2017 WL 6345809, *6 (S.D. Ala. Dec. 12, 2017) (plaintiff "has made

no showing that the public-interest factors overwhelmingly disfavor enforcement of the forum-selection clause… This is not an unusual or extraordinary case; therefore, the forum-selection clause is properly enforced.").

Where the state wherein the lawsuit was initiated has a clear public policy that prohibits enforcement of forum selection clauses, a forum selection clause will be found to contravene that state's public policy. For example, the Eleventh Circuit concluded that a forum selection clause was against public policy in *Davis*, 936 F.3d at 1179-81 (11th Cir. 2019) because Georgia law expressly prohibited enforcement of forum selection clauses in cases involving payday loans. *Cf. Schalls Holding APS v. F&E Aviation Holdings, Inc.*, No. 25-22816-CIV, 2025 WL 2840743, at *4 (S.D. Fla. Aug. 6, 2025) (rejecting Plaintiff's argument that the forum selection clause should not be enforced due to Florida's public policy interest in policing fraud where Plaintiff did not point to specific Florida legislation articulating that Florida's interest was so strong that the state barred those types of claims from arbitration); *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 1:19-CV-00333-KD-C, 2019 WL 13217861, *5 (S.D. Ala. Sept. 26, 2019) (rejecting argument that forum selection clause was unenforceable under Alabama public policy that did not expressly prohibit such clauses; noting that the plaintiff "is essentially requesting that the undersigned articulate and apply a public policy that has not been stated or even implied by the Alabama legislature."); *Gordon*, 418 F.Supp.3d 1132 at 1140-41 (finding that Florida does not have a clear policy against forum selection clauses in cases arising under Florida's Deceptive and Unfair Trade Practices Act).

7

Here, Church concedes that the Eleventh Circuit has consistently held that forum selection clauses are presumptively valid. Doc. 12 at 5. Church then relies on *Krenkel*, 579 F.3d at 1281, to argue that a presumptively valid forum selection clause should be invalidated where enforcement would be unfair or unreasonable. However, Church fails to allege sufficient facts that enforcing the clause in the present case would be unfair or unreasonable. Specifically, Church has not alleged any facts to show that the case at bar is an extraordinary case, such that the forum selection clause should not be enforced. *See Atlantic Marine Const. Co.*, 571 U.S. at 64. Equally important, Church has not put forth a clear Florida public policy to allege that the Florida legislature, or any other official governmental body of Florida, has articulated a clear position against enforcing forum selection clauses in insurance disputes that involve Florida residents or Florida property. Therefore, the forum selection clause does not contravene public policy.

**B. Contract of Adhesion**

Next, Church avers the forum selection clause is unenforceable because it was not freely negotiated, and, therefore, it is a voidable contract of adhesion. Doc. 12 at 6-7. Church specifies that Mt. Hawley used its superior bargaining power to embed the contested clause into the standardized insurance endorsement, and Church would not have seen the forum selection clause until after the Policy had already been issued. *Id.* at 6-7. Therefore, the forum selection clause was the product of overreach as defined by *Krenkel,* 579 F.3d at 1281. *Id.* at 8. Mt. Hawley responds that the forum selection clause was reasonably communicated to Church because its physical characteristics

were apparent, and the Policy was a renewed policy that Church had previously accepted the prior year. Doc. 18 at 4-6.

To determine whether there was fraud or overreaching in a non-negotiated forum selection clause, courts consider whether the clause "was reasonably communicated to the consumer." *Krenkel*, 579 F.3d at 1281. "A useful two-part test of 'reasonable communicativeness' takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms. *Id.* Reasonable communication puts the consumer on notice that they *should* read the terms and conditions of a policy, regardless of whether they choose to do so. *Id.* at 1282 (finding clause was not the result of fraud or overreaching where it notified the signatory to read before signing); *see also Nash v. Kloster Cruise A/S,* 901 F.2d 1565, 1567 (11th Cir.1990) (holding that a warning to "read the terms and conditions" provided reasonable notice).

With respect to physical characteristics, a forum selection clause cannot be hidden or ambiguous. *Krenkel*, 579 F.3d at 1281. In *Krenkel*, for example, the court concluded the physical characteristics of the clause provided reasonable notice where it was on a one-page form containing only eight paragraphs; it was set apart in a separate paragraph and printed in the same legible font and size as the other paragraphs; and the page had a warning in bold, capitalized font to read before signing. *Id.* at 1282. Moreover, the length of the document in which the clause is contained is not a dispositive factor. *See Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246 (11th Cir. 2012) ("Although the term appears 131 pages into the Royal

Caribbean brochure, the terms and conditions section itself, of which the clause is a part, appears to be only four pages, and it would be inaccurate to characterize this term as somehow 'buried' within that section; it can be found under a clear heading, surrounded by related headings, and it appears in identical typeface and size to all of the other terms and conditions.") (superseded by statute on other grounds as stated in *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 n.2 (11th Cir. 2018)).

In the instant case, the physical characteristics of the forum selection clause deem that it was reasonably communicated to Church. Specifically, the page containing the clause states clearly, in bold, capitalized text at the top, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" Doc. 8-1 at 33 of 44; *see Krenkel*, 579 F.3d at 1282 (form notified signatory to read before signing). All of the text, except for the heading, is printed in the same size and in a legible font. *Id.* The language of the clause is written in laymen's terms and sufficiently gave Church notice that any claims arising out of the Policy would have to be litigated in New York, and New York law would apply. *Id.* In light of these physical characteristics, the fact that the page is contained within a lengthy document is not dispositive. *See Myhra*, 695 F.3d at 1246.

The second part of the inquiry into whether the forum selection clause was reasonably communicated requires this Court to adjudge whether Church had the opportunity to be meaningfully informed of the clause and to reject its terms. There

are multiple indications that Church had the opportunity to be meaningfully informed of the clause and refuse or rescind its terms.

First, the contested forum selection clause was contained in a policy that was being renewed. *See* Doc. 18-3 at 3 of 9 (subheading entitled, "RENEWAL OF POLICY"). In turn, the forum selection clause in the 2024-2025 policy is exactly identical to the forum selection clause that was in the 2023-2024 policy. Doc. 8-1 at 33 of 44; Doc. 18-2 at 33 of 44. Therefore, for at least one year prior to renewing the Policy, Church had an opportunity to be meaningfully informed of the pertinent clause and could have rejected it before renewing the Policy.

Second, the Policy containing the contested forum selection cause was sent to the agent on May 22, 2024, but the Policy would not take effect until May 28, 2024. Doc. 18-3 at 2-3 of 9; Doc. 8-1 at 3 of 44. Therefore, Church was put on constructive notice of the clause via its agent and could have rejected its terms before the Policy went into effect. *See McCluskey El v. Celebrity Cruises, Inc., No. 21-14139, 2023 WL 3035216, at *2 (11th Cir. Apr. 21, 2023)* ("We generally hold that constructive notice exists when an agent accepts contract documents on behalf of their principal."); *Baer v. Silversea Cruises Ltd.*, 752 F. App'x 861, 865–66 (11th Cir. 2018) (where record reflected plaintiff communicated regularly with travel agent and authorized her to receive certain documents on his behalf, he had the opportunity to avail himself of the notices contained in the ticket contract in her possession); *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 847–48 (11th Cir. 2015) (because plaintiffs' travel agent knew that resort guests were subject to certain terms and conditions, agreed to

11

notify their clients regarding the terms and conditions, and knew where to obtain the specific terms and conditions, plaintiffs had constructive notice of the forum selection clause).

Finally, a copy of the Policy was emailed to the agent[1] on June 19, 2024 (Doc. 18-4), yet Church's property was damaged on October 9, 2024. Doc. 1-2 ¶ 9. Therefore, even after the policy was in effect, Church had approximately four months to become informed of the forum selection clause and pursue rescission if desired. *See Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 926–27 (11th Cir. 2016) (plaintiffs did not allege that they requested to strike out the forum selection clause at check-in and were refused); *McCluskey v. Celebrity Cruises, Inc.*, 20-CV-24705, 2021 WL 5019036, *5 (S.D. Fla. Sept. 3, 2021) (collecting cases in which courts emphasized plaintiff had the opportunity to become informed of a contract's terms and conditions after accepting it); *see also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.,* 761 So.2d 306, 313 (Fla. 2000) (noting a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission).

Given the physical clarity of the endorsement and the warning to policy holders to read it carefully, along with Church's opportunity to become meaningfully informed by reviewing the clause—either from the prior year's policy or via the copies sent to the agent—this Court concludes the forum selection clause was reasonably

---

[1] The Policy identifies "Element22 Insurance Svcs Inc" as the agent. Doc. 8-1 at 3 of 44. A copy of the policy was emailed to addresses with the domain name of "Element22ins." Doc. 18-4 at 2.

communicated to Church and was not the result of fraud of overreaching. The Policy was not a contract of adhesion.

### C. Deprivation of Day in Court

Finally, Church submits that transferring the case to New York would deprive it of its day in court. Doc. 12 at 8-9. Specifically, Church argues being required to litigate the case in New York is prohibitively expensive and logistically inconvenient, as Church would have to retain out-of-state counsel and coordinate travel for witnesses familiar with Florida property. *Id.* at 8-9. Mt. Hawley responds that when a contract contains a valid forum selection clause, ease of access to evidence and witnesses cannot be considered under a § 1404(a) analysis. Doc. 18 at 6. Mt. Hawley also highlights that New York has the most resident lawyers of any state. *Id.* at 6-7.

The Eleventh Circuit has unequivocally articulated that a district court is not to give any deference to parties' private interests when deciding whether to enforce a forum selection clause:

> A court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves, their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. Whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum was clearly foreseeable at the time of contracting. As a consequence, a district court may consider arguments about public-interest factors only.

*Atl. Marine Const. Co.*, 571 U.S. at 64 (quotation modified).

Here, Church's assertion that New York litigation would impose upon it substantial financial and logistical burdens is of no consequence in determining whether transferring this case to New York is appropriate under § 1404(a). Given the plain language of the forum selection clause and Church's opportunity to review the same (described *supra*), Church waived its right to contest New York as the selected litigation forum when it did not contest the Policy within the allotted time frame, or otherwise rescind the contract before its property was damaged. Hence, this Court is not persuaded by Church's belated grievances about the burdens associated with New York litigation. *See also Cleveland*, 657 Fed. Appx. at 927 (11th Cir. 2016) (Generic averments of financial hardship and inconvenience are insufficient to show that enforcing a forum selection clause would deprive a plaintiff of their day in court.) Transferring the case to New York would not deprive Church of its day in Court.

Accordingly, it is

**ORDERED**:

1. Defendant Mt. Hawley Insurance Company's Motion to Transfer Venue (Doc. 8) is **GRANTED**.  This action is transferred to the Southern District of New York.

2. The Clerk is directed to immediately transfer this action to the Southern District of New York, and close this file.

14

**DONE AND ORDERED** in Tampa, Florida on June 3, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented parties